



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MURFREESBORO

| | |
|---|---|
| **PAULA SMITH,** | **Docket Nos. 2025-50-5373** |
| **Employee**, | **2025-50-5374** |
| v. | |
| **MCNEILUS COMPANIES,** | **State File Nos. 50279-2025** |
| **Employer**, | **51831-2025** |
| and | |
| **HARTFORD ACC. AND INDEM. CO.,** | **Judge Dale Tipps** |
| **Carrier**. | |

---

## EXPEDITED HEARING ORDER DENYING BENEFITS

---

The Court held an Expedited Hearing on April 7, 2026. The issues were whether Ms. Smith is likely to prove at trial that she is entitled to additional temporary disability and medical benefits. For the reasons below, the Court holds that Ms. Smith has not shown she is likely to prevail at a hearing on the merits that she is entitled to the requested benefits.

### Claim History

Over the course of several weeks in 2025, Ms. Smith reported left-wrist problems to McNeilus. Each time, McNeilus furnished on-site care until she reported another injury on July 10, when it sent her to an urgent care facility. There, the nurse practitioner assessed unspecified synovitis and tenosynovitis and assigned light-duty restrictions.

Ms. Smith continued working until July 23, when she reported an injury to her right knee. McNeilus again authorized treatment at the same clinic and, after some delay, began paying temporary disability benefits. It later offered Ms. Smith

1

an orthopedic panel, and she selected Dr. Timothy Steinagle.[1]

Dr. Steinagle saw Ms. Smith on October 23 and ordered an MRI. He also returned Ms. Smith to work with restrictions. The MRI showed "[m]ild edema of the suprapatellar fat pad, suggestive of fat pad impingement syndrome" and "[n]o other significant internal derangement of the knee identified."

On December 11, Dr. Steinagle reviewed the MRI and noted it showed "no evidence of internal derangement." He assessed subjective complaints of knee pain with minimal objective findings and concluded that "there is no evidence of an acute work-related accident or injury." He added that the diagnostic studies did not suggest any abnormalities requiring treatment. He released her and later assigned a maximum medical improvement date of December 11. A Worklink report states, "No follow up required," but Dr. Steinagle has not refused to see Ms. Smith again.

Based on Dr. Steinagle's maximum medical improvement finding, McNeilus discontinued temporary disability benefits.

Ms. Smith testified she still has pain in her right knee. She asked to see a different doctor, but McNeilus denied her request. Additionally, Ms. Smith described problems getting medical treatment early in her claim, such as not initially receiving a panel of physicians. Then, she claimed she went months without care.

Regarding her wrist injury, Ms. Smith said it was partially denied, which led to the carrier clawing back some payments from the clinic, which then sent her a bill for the balance.

Ms. Smith also described problems with temporary disability benefits. Specifically, she said her payments were consistently late, including some checks that were delayed by a week or more. These delays caused financial hardship.

Disability payment records show that the payment was issued on August 21 for four weeks of benefits that had already accrued. One other payment was skipped and made up with a double payment a week later. Ms. Smith said that the other checks were delivered late until the carrier started direct deposit in October.

Ms. Smith requested an order for continuing medical treatment, specifically physical therapy for her knee. She also contended that she is entitled to additonal

---

[1] Around the same time that the panel was offered, McNeilus terminated Ms. Smith's employment.

temporary disability benefits from the date they were terminated. As she believes her compensation rate was incorrectly calculated, she additionally sought compensation for the underpayment. Finally, Ms. Smith argued that a penalty for the late temporary disability benefits is appropriate.[2]

McNeilus countered that it furnished or paid all benefits to which Ms. Smith was entitled.

## Findings of Fact and Conclusions of Law

Ms. Smith must show she is likely to prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(c)(6) (2025); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

Turning first to Ms. Smith's request for additional medical benefits for her knee, under section 50-6-204(a)(1)(A), McNeilus must provide medical treatment made reasonably necessary by the work accident. To accomplish this, it must offer a panel of three physicians. *Id.* § 50-6-204(a)(3)(A)(i).

McNeilus met these requirements, as Ms. Smith chose Dr. Steinagle from a panel. It then authorized her visits with the doctor until he released her.

Ms. Smith contended that she still needs physical therapy. She also argued that the Court should credit the findings of the MRI, specifically the suggestion of the fat pad impingement syndrome, over Dr. Steinagle's conclusion that she needed no further treatment. These contentions are unpersuasive.

First, courts cannot formulate their own medical opinions and must rely on doctors for issues of diagnosis and treatment. *See Love v. Delta Faucet Co.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 45, at *15-16 (Sept. 19, 2016) ("judges, like lawyers, are poorly positioned to formulate expert medical opinions."). Dr. Steinagle reviewed the MRI, examined Ms. Smith, and concluded he saw no evidence of an acute work injury nor any need for additional treatment.

---

[2] She also complained of wrongful termination and problems getting copies of her medical records. Further, Ms. Smith objected to McNeilus asking her to sign blanket authorizations or documents she felt were inaccurate, as well as the nurse case manager wanting to attend the actual doctor examination. The Court explained that it has no authority to address these issues. Any recourse she might have for those allegations lies outside of the Court of Workers' Compensation Claims.

The Court recognizes Ms. Smith's dissatisfaction with Dr. Steinagle. She felt he spent inadequate time with her, and she questioned how she could have reached maximum medical improvement without any actual treatment. Further, she contended that his opinion was at odds with the MRI results.

However, Dr. Steinagle reviewed the MRI and apparently concluded that the possibility of fat pad impingement did not constitute an internal derangement. His opinion is presumed correct under section 50-6-102(12)(E), and Ms. Smith presented no medical opinions to challenge his conclusions or overcome that presumption. This means the Court cannot find she is likely to prove entitlement to a new panel of physicians or additional treatment.

Notably, Ms. Smith remains entitled to treatment with Dr. Steinagle, since he has not declined to treat her. *See Limberakis v. Pro Tech Sec.,* 2017 TN Wrk. Comp. App. Bd. LEXIS 53, at *10 (Sept. 12, 2017) (In a compensable claim, where an authorized treating physician refuses to allow a return visit, the trial court correctly ordered an employer to replace that physician on a panel to allow the employee to select another physician for any "reasonable and necessary medical treatment causally-related to the work injury.").

Similarly, the Court has insufficient information to determine whether the bill Ms. Smith claims she received for her wrist treatment should have been paid by McNeilus.

Turning to Ms. Smith's claim for temporary disability benefits, these are generally not owed after an employee reaches maximum medical improvement. Contrary to Ms. Smith's argument, a court order is not required for an employer to stop temporary disability payments in that situation. Further, an employee "still must show that he would likely prevail at trial in proving that the original [maximum medical improvement] determination was premature." *Mansell v. Southeast Personnel Leasing, Inc.*, 2025 TN Wrk. Comp. App. Bd. LEXIS 9, at *11 (Mar. 12, 2025).

As with the request for additional treatment, the only medical proof regarding maximum medical improvement was Dr. Steinagle's opinion that Ms. Smith reached that objective on December 11. Without additional evidence, she is unlikely to prove entitlement to an additional period of temporary disability benefits.

Regarding the correct compensation rate, Ms. Smith disagreed with the rate McNeilus calculated, but she presented no proof of a miscalculation or of the correct

rate.

Finally, Ms. Smith requested the imposition of penalties. As to the timing of her medical treatment for the knee, Ms. Smith reported the injury on July 23 and received authorized treatment at the urgent care clinic on the 28th. It appears her last visit to the clinic was August 4. McNeilus issued a panel of orthopedic specialists on August 20, which Ms. Smith did not sign until September 30. At that point an appointment with Dr. Steinagle was scheduled for October 23. The Court does not find this timetable to be unusual, much less egregious, and declines to refer the case for a penalty determination.

Ms. Smith also requested an order penalizing McNeilus under section 50-6-205(b)(3), which provides a 25% penalty for temporary disability benefits not paid under the statute. Regarding the payment that she alleges was a week late, section 50-6-205(b)(2) only requires semimonthly payments, so the Court declines to impose a penalty for the late installment.

However, McNeilus's own payment register shows that it did not pay the first temporary disability benefit until August 21, four weeks after she stopped working. As required by section 50-6-205(b)(3), the Court therefore orders McNealus to provide documentation no later than May 4, 2026, as to why the civil penalty should not be assessed.[3]

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. Smith's request for additional benefits is denied at this time. She remains entitled to any reasonable and necessary medical treatment causally related to the work injury with Dr. Steinagle.

2. This case is set for a Status Hearing on July 1, 2026, at 9:30 a.m. Please call 855-874-0473 to participate. Failure to call might result in a determination of the issues without your further participation. All conferences are set using Central Time.

**ENTERED April 13, 2026.**

---

[3] Ms. Smith described many of the payments as being received much later than the issuance date but provided no precise dates as to when she received them, nor any evidence that McNeilus had any control over the alleged delay. Therefore, the order for additional documentation does not include these problems.

_____

**JUDGE DALE TIPPS**
**Court of Workers' Compensation Claims**

**APPENDIX**

**Exhibits:**
1. Sworn declaration of Paula Smith
2. Dr. Steinagle's October 23, 2025 MRI order and Worklink report
3. Ascension St. Thomas request for payment (identification only)
4. Partial indemnity payment record from carrier's app
5. First report of injury
6. Wage statement
7. Urgent Care records for left wrist
8. July 24, 2025, Return to Work Letter
9. Urgent Care records for right knee
10. Notice of Denial
11. Form C-42 Choice of Physician
12. Dr. Steinagle's treatment records
13. August 22, 2025 termination letter
14. Temporary disability payment printout
15. November 22, 2025 MRI report and December 11, 2025 Worklink report
16. Printout of August 22, 2025 termination voicemail
17. Printout of December 16, 2025 text from Holly Lewis
18. Printout of November 19, 2025 text from Paula Smith
19. Printout of Paula Smith's email request for medical records to Medicopy
20. Printout from National Library of Medicine's website (identification only)
21. Printout from Cornell Law School website (identification only)
22. Printout of excerpt from an Appeals Board opinion (identification only)
23. Printout of email exchange between Ms. Smith and McNealus's counsel
24. Printout from Unemployment Compensation website (identification only)
25. Printout of email exchange between Ms. Smith and Marian Perry
26. Printout of email exchange between Ms. Smith and Robin Blocher

**CERTIFICATE OF SERVICE**

I certify that a copy of this order was sent as shown on April 13, 2026.

| Name | Email | Service sent to: |
|---|---|---|
| Paula Smith | X | Ginabinnna779@icloud.com |
| Neil McIntire, Employer's Attorney | X | nmcintire@howell-fisher.com |

_____

**PENNY SHRUM, COURT CLERK**
**wc.courtclerk@tn.gov**



<u>Right to Appeal</u>:

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board. To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
   ➢ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
   ➢ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.
   When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal. If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee. If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk. The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted. For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

   **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable. See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____    ☐ Motion Order filed on _____

☐ Compensation Order filed on_____    ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

## Parties

**Appellant(s)** (Requesting Party): _____  ☐ Employer ☐ Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*